UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THOMAS FARKAS,                              :

               Petitioner,     :    03 Civ. 9758 (TPG)

    - against -                            :    **OPINION**

ROY GIRDICH, Superintendent,                :

               Respondent.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Thomas Farkas, a state prisoner, has filed a habeas corpus petition pursuant to 28 U.S.C. § 2254. Respondent has answered, contending that the petition is invalid in all respects.

      Petitioner claims the following: (1) he received ineffective assistance from trial counsel; (2) his right to counsel was violated when he was questioned in the absence of counsel assigned to him on another criminal matter; (3) his written and videotaped confessions were coerced; (4) there was unreasonable delay in initiating prosecution; (5) the felony murder charge was not supported by the evidence; (6) his guilty plea was coerced; and (7) his right to counsel was violated for the additional reason that he was denied access to his attorney despite repeated requests after he was taken into custody.

      The claim of ineffective assistance of counsel includes the following: (a) his attorney failed to know the accurate facts of the case, and did not pursue pertinent issues of defense, including violations of petitioner's state

and constitutional rights; (b) counsel's omnibus motion asserted that petitioner voluntarily accompanied the detectives, when in fact petitioner was in custody; (c) the attorney never addressed nor pursued the issue of petitioner's "prior representation" on an unrelated charge in Queens (this being the basis for the claim that his request to counsel was violated when he was questioned); (d) the attorney never raised the issue of unreasonable delay in prosecuting petitioner; (e) the attorney failed to be present at a police line-up; (f) the attorney only met with petitioner on one occasion outside of court to discuss the case and this was only for about five minutes; (g) the attorney misrepresented the effect of the plea, informing him that he would be eligible for both good time and work release, and stating that the best that could be hoped for at trial would be conviction of robbery in the first degree, carrying a sentence of 12 ½ to 25 years; and (h) the attorney did not inform petitioner that a notice of appeal had been filed and did not tell him of his right to appeal. For the reasons described below, the petition is denied and dismissed in its entirety.

## Facts

On February 2, 1991, Charles Kritsky was murdered. Several weeks prior to the murder, petitioner and Friere had arranged to meet Kritsky to purchase 50 pounds of hashish. The deal was set to occur at Kritsky's home on the evening of February 2, 1991. However, at some point prior to this

-3-

appointment, petitioner and Friere decided they would rob Kritsky. They therefore arrived at Kritsky's house on February 2, 1991 armed with semi-automatic pistols. During an ensuing struggle, petitioner directed Friere to shoot Kritsky, which he did with one fatal shot.

Robert Morrison, a friend of Kritsky's, was present at the apartment during the events, and later identified petitioner to the detectives investigating the murder, who created a "wanted" poster to be distributed. On January 2, 1992, law enforcement officers recognized petitioner in Queens and arrested him. Defendant was formally placed under arrest for the murder of Kritsky upon his arrival at the Ninth Precinct in Manhattan. At the time of his arrest, petitioner had a pending misdemeanor claim in Queens, on which he was represented by the Legal Aid Society.

Following his arrest, petitioner made oral, written, and videotaped statements implicating himself in the murder after receiving and waiving his Miranda rights. He confessed to planning the robbery and supplying Friere with the gun used to murder Kritsky. Petitioner also informed the police about the whereabouts of Friere, who was later arrested.

Subsequent to the making of the statements by petitioner, Francis P. Karam was assigned to act as petitioner's lawyer.

By New York County Indictment Number 132/92, filed on January 23, 1992, a grand jury charged petitioner with one count of murder in the

second degree. On March 12, 1992, Morrison, who had testified to the grand jury subsequent to petitioner's arrest under a waiver of immunity, identified petitioner in a line-up. Karam was not present at the line-up. Kritsky's brother also provided information identifying petitioner as having been in Kritsky's apartment shortly before the shooting.

Karam moved to suppress various incriminating evidence. A hearing was scheduled. However, on May 13, 1993, prior to the commencement of the hearing, petitioner pled guilty. The court had informed petitioner and Friere that once the hearing commenced, the offer of 15 years to life made on February 11, 1992 would be withdrawn and both accused men could face a maximum sentence of 25 years to life. After reviewing his videotaped statement and consulting with his counsel, petitioner entered a plea to murder in the second degree. At sentencing on June 23, 1993, petitioner did not assert that his plea was involuntary, nor move to withdraw it, and received a sentence of 15 years to life. Friere, by contrast, chose to go to trial and was convicted of murder in the second degree and sentenced to 25 years to life in prison.

On July 16, 1993, Karam filed a notice of appeal on behalf of petitioner. However, petitioner neither perfected this appeal nor sought assistance in doing so. In early 2001, petitioner filed a motion in the Appellate Division, First Department, to carry out the appeal, which was opposed by the

State on the ground that petitioner had failed to take any action on his appeal for over seven years, and thus had failed to prosecute his appeal. On February 2, 2001, the Appellate Division denied petitioner's motion, with leave to renew if petitioner provided an affidavit that explained his delay in prosecuting his appeal. Petitioner, however, failed to submit any additional papers to the court. On May 10, 2001, the Appellate Division denied petitioner's motion and dismissed the appeal. Petitioner submitted a motion for reconsideration to the Appellate Division, which was denied on August 9, 2001. Petitioner did not seek leave to appeal to the New York Court of Appeals.

On May 13, 2002, petitioner moved pro se to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10. In a decision dated March 3, 2003, Justice Michael Ambrecht of Supreme Court, New York County, denied the motion. In April 2003, petitioner sought leave to appeal to the Appellate Division, which the State opposed. On July 10, 2003, the Appellate Division denied petitioner's application for leave to appeal. On October 6, 2003, petitioner filed the instant application for habeas corpus relief.

## Discussion

Timeliness

Before addressing the merits of the instant habeas petition, this court must address whether the petition is time-barred. The Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA") prescribes, in relevant part, a one-year statute of limitations for state prisoners seeking federal review of their state court criminal convictions. 28 U.S.C. § 2244(d)(1). This one year period begins to run from the date on which the state criminal conviction became final at the conclusion of direct review or at the expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A). The time period, however, is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). This tolling does not restart the date from which the one-year statute of limitations begins to run, rather it simply "excludes time during which properly filed state relief applications are pending." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000).

After petitioner was sentenced on June 23, 1993, his counsel filed a notice of appeal on his behalf on July 16, 1993. Petitioner, however, failed to prosecute this appeal until 2001, when he filed a motion in the Appellate Division, First Department. On February 21, 2001, the Appellate Division denied his motion, with leave to renew. Petitioner then failed to submit additional papers to the court, and on May 10, 2001, the Appellate Division dismissed his appeal. Following the Appellate Division's dismissal of his appeal on May 10, 2001, petitioner filed a motion for reconsideration in June 2001, which was denied on August 9, 2001. According to New York law, petitioner

had another 30 days to seek a certificate granting leave to appeal to the New York Court of Appeals. N. Y. Crim. Proc. Law § 460.10(5)(a). Because petitioner never sought this leave to appeal, the State concludes that petitioner's state court conviction became final for purposes of the AEDPA when the time within which he could seek to appeal expired. See Martinez v. United States, Nos. 00 Civ. 1214 (DLC), 96 CR. 450-04 (DLC), 2000 WL 863121, at *1 (S.D.N.Y. Jan. 28, 2000) ("judgment of conviction became final for purposes of the AEDPA ... when his time to file a notice of appeal expired.").

Petitioner's state court conviction became final, in terms of the AEDPA, on September 10, 2001, 30 days after the Appellate Division denied petitioner's motion for reconsideration. The 30 days does not include the Saturday on which the 30th day fell, and the following Sunday. See Rodney v. Breslin, No. 07-CV-4519 (SLT)(RML), 2008 WL 2331455, at *1 n.2 (E.D.N.Y. June 3, 2008). Petitioner thus had one year from that date, until September 10, 2002, to petition this court for a writ of habeas corpus.

The instant habeas petition was not filed until October 6, 2003, more than one year after the conviction became final. However, AEDPA's one-year statute of limitations is tolled during the pendency of any properly filed state post-judgment motion - any collateral attack on the conviction. 28 U.S.C. § 2244(d)(2). On May 13, 2002, petitioner moved under N.Y. Crim. Proc. Law § 440.10 to vacate his conviction, and therefore, as the State concedes, the

Case 1:03-cv-09758-TPG   Document 11   Filed 06/11/10   Page 8 of 20

-8-

limitations period prescribed by the AEDPA was tolled from that date. In an opinion dated March 3, 2003, Justice Ambrecht denied petitioner's application. Petitioner sought leave to appeal this denial in April 2003, which the Appellate Division, First Department denied on July 10, 2003. The State therefore contends that the AEDPA's one-year statute of limitations began to run again on July 10, 2003.

Petitioner, however, argues that the statute of limitations period did not begin to run again until August 25, 2003, when he received notice of the Appellate Division's denial of his leave to appeal.

It is unnecessary for the court to resolve this issue because under either approach, the instant habeas corpus petition is timely filed. At the point at which petitioner filed his post-judgment motion to vacate his state conviction, which tolled the AEDPA limitations period, 245 days had run. Thus, petitioner still had 120 days within which to file his habeas petition. Even assuming that the State is correct that the limitations period began to run again on July 10, 2003, only 88 days elapsed between this date and when petitioner filed the instant habeas petition on October 6, 2003. Accordingly, petitioner's habeas corpus petition is timely.

The Habeas Corpus Standard

The standard to be applied by this court in the present habeas corpus petition is set forth in the AEDPA, 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute further states that a state court's factual findings are presumed correct, and this presumption can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

It is also well established that a federal habeas court is barred from reviewing a state prisoner's federal claims when those claims were held to be unpreserved in state court pursuant to an appropriate state procedural rule. See Harris v. Reed, 489 U.S. 255, 262-65 (1989). This bar can be overcome only if the habeas petitioner "can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Id. at 262.

N.Y. Crim. Proc. Law § 440.10(2)(c) provides, in pertinent part:

> ... the court must deny a motion to vacate a judgment when:
>
> * * *

-10-

>    (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

According to the Second Circuit, "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996). A ruling under N.Y. Crim. Proc. Law § 440.10(2)(c) constitutes an independent and adequate state ground. See Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

It is also the law in New York, established by judicial decisions, that a defendant who pleads guilty prior to the judicial determination of suppression issues waives all such issues and forfeits the right to have them reviewed on appeal or on a collateral motion to vacate a judgment of conviction. See Sullivan v. Goord, No. 05-CV-6060L, 2007 WL 2746900, at *2 (W.D.N.Y. Sept. 19, 2007); Love v. Garvin, No. 97 Civ. 4909 (SJ), 2004 WL 1810342, at *3 (E.D.N.Y. Aug. 9, 2004).

State Court Adjudication

        As stated earlier, petitioner moved *pro se* under N.Y. Crim. Proc. Law § 440.10 to vacate his conviction, and this motion was denied by Justice Ambrecht in a decision dated March 3, 2003. This decision will now be summarized.

        After describing the facts of the crime and the proceedings in the case, the judge proceeded to his rulings. He first dealt with the claim that the charge of felony murder was unsupported by the evidence. Of course, this was and is a somewhat strange claim since the case did not go to trial but was disposed of on a plea of guilty by the petitioner. But the judge cited the state law to the effect that a motion to vacate a conviction must be denied if there are sufficient facts on the record to allow adequate review on direct appeal, but no such appellate determination has occurred due to the defendant's unjustifiable failure to take or perfect an appeal. Justice Ambrecht noted the obvious fact that petitioner failed to perfect his appeal within the prescribed period. The judge then dealt with the claim that trial counsel was at fault for this lapse. But the judge found such claim unsupported by the record, which showed that petitioner had in fact been given a written notice advising him to write to the Appellate Division to request assignment of counsel if he chose to appeal from his conviction. Justice Ambrecht further noted that petitioner had been offered the opportunity to cure the failure to perfect his appeal by

-12-

submitting an affidavit explaining his delay, but that petitioner had made no submission.

On the basis of these circumstances, the judge denied the branch of plaintiff's motion claiming insufficient evidence to support the felony murder charge on the grounds that there had been no timely and proper direct appeal and that a motion under § 440.10 could not be employed as a substitute for direct appeal. The judge went on to state that, in any event, the claim of insufficient basis for the felony murder charge was without merit since the grand jury minutes were sufficient for the indictment, and petitioner's own statements established that he was guilty fo the crime of felony murder.

The judge then dealt with suppression issues and the alleged failure of the trial attorney to pursue such issues. He summarized these issues in his opinion as follows:

(1)    Petitioner had a right to counsel, which attached immediately upon his arrest due to another pending case in which he had counsel, meaning that petitioner was improperly questioned in the absence of this counsel.

(2)    Petitioner's written and videotaped confessions were coerced.

(3)    Petitioner never waived his <u>Miranda</u> rights.

(4)    Trial counsel failed to pursue the suppression of the statements/confessions, allegedly invalidated by the above three circumstances.

-13-

Justice Ambrecht held that there was no merit to this claim of inadequate counsel, since counsel did indeed pursue the issues by making motions to suppress.

With respect to the suppression motions, Justice Ambrecht noted at one point in his opinion that defense counsel was not present at the line-up but later moved for <u>Wade</u> and <u>Huntley</u> hearings which were both granted. Further on in the opinion, the judge stated that defense counsel moved for, and was granted, a <u>Dunaway/Huntley</u> hearing and that the <u>Huntley</u> hearing was about to commence but was obviated by defendant's decision to enter a guilty plea.

It is worth explaining that a pretrial hearing held pursuant to <u>People v. Huntley</u>, 15 N.Y.2d 72, 255 N.Y.S.2d 838 (1965), is used to evaluate whether inculpatory statements made by a criminal defendant to law enforcement officers were voluntary. <u>See</u> <u>id.</u> at 78. A pretrial hearing held pursuant to <u>Dunaway v. New York</u>, 442 U.S. 200 (1979), is used to evaluate whether statements should be suppressed on the grounds that the police did not have probable cause for a criminal defendant's arrest. <u>See</u> <u>id.</u> at 216-18. A pretrial hearing held pursuant to <u>U.S. v. Wade</u>, 388 U.S. 218 (1967), is used to suppress identification on the grounds that the pretrial identification procedure was suggestive, and the witnesses would not have been able to identify the accused under ordinary circumstances. <u>See</u> <u>id.</u> at 241-42.

-14-

The record on the present habeas corpus petition does not provide all the details about what motions were made and what hearings were scheduled. However, on the basis of Justice Ambrecht's decision, it would appear that originally the defense attorney made a motion to suppress the line-up evidence (the <u>Wade</u> motion) and a motion to suppress statements (the <u>Huntley</u> motion). Justice Ambrecht stated that the motion to suppress the statements was scheduled for hearing, which the judge referred to as a "<u>Dunaway/Huntley</u> hearing." Such a hearing would have dealt with any claim that petitioner's statements were made after an improper arrest (<u>Dunaway</u>) and any claim that the statements were involuntary (<u>Huntley</u>). Justice Ambrecht did not say whether a <u>Wade</u> hearing was scheduled. However, in the motion before Justice Ambrecht, there was no claim that under <u>Wade</u> that the line-up was improper. There were, however, claims before him that the statements were made after petitioner was illegally detained and that they were involuntary.

Justice Ambrecht ruled that the suppression issues were waived by the guilty plea, as long as the plea was made knowingly, intelligently and voluntarily. The judge ruled that petitioner's plea did indeed meet these standards. In the judge's view, petitioner's decision to enter a guilty plea was prompted by his recognition of the overwhelming evidence against him and by the prospect of receiving a relatively favorable disposition in the form of a

sentence of 15 years to life, whereas the co-defendant, who proceeded to trial, received a sentence of 25 years to life. The judge found that petitioner's plea was entirely voluntary and that any advice by his attorney to accept the plea offer was consistent with meaningful representation.

Effect of State Court Decision on Present Petition

The specific items raised in the present habeas corpus petition are listed at the beginning of this opinion. There are seven numbered items, the first of which is the claim of ineffective assistance of counsel. The latter claim has eight sub-items, listed as (a) through (h).

One of the items dealt with on the merits by Justice Ambrecht is Item No. (6), the claim that petitioner's guilty plea was coerced. The judge rejected this claim on its merits, as already described. According to 28 U.S.C. § 2254(d), this claim cannot be the basis for habeas corpus relief, and none of the potential exceptions to this bar applies.

Another issue, or set of issues, dealt with on the merits by Justice Ambrecht is the claim that petitioner received ineffective assistance from trial counsel in that the attorney did not pursue violations of petitioner's constitutional rights (obviously referring to the alleged coerced confessions) and the alleged failure to have his counsel on another criminal matter present at the questioning on the felony murder case). Justice Ambrecht rejected these claims of inadequate representation on the ground that the defense attorney

did in fact pursue the above issues by motions to suppress. Justice Ambrecht's ruling in this regard covers part of Item No. (1)(a) and all of Item No. (1)(c).

  Justice Ambrecht's decision also had the effect of rejecting on the merits Item No. (1)(h), in which petitioner claims that his attorney did not inform him that a notice of appeal had been filed and did not tell him of his right to appeal. The judge specifically found that petitioner was apprised of his right to appeal through a written notice given him after his sentence, as indicated by the signature of the presiding judge. On the question of whether his attorney advised him that a notice of appeal had been filed, if petitioner was unaware of that fact and if such a circumstance constituted an excuse for not perfecting the appeal, that excuse could have been presented when the Appellate Division gave petitioner the opportunity to explain the failure to perfect the appeal. As Justice Ambrecht found, no such explanation was tendered by petitioner. Under 28 U.S.C. § 2254(d), this claim cannot be pursued in the habeas corpus petition.

  Justice Ambrecht also in effect rejected on the merits the claim that the attorney failed to know the facts of the case and did not pursue pertinent issues of defense, the claim that the attorney only met with petitioner briefly, and the claim that the attorney misrepresented the effect of the plea. These claims are made in Items No. (1)(a), (f), and (g). Justice Ambrecht ruled

that counsel's advice to accept the plea offer was consistent with meaningful representation, in view of the overwhelming evidence against petitioner and in view of the strong likelihood that petitioner would receive a substantially greater sentence if he went to trial versus the sentence involved in the plea offer. Under 28 U.S.C. § 2254(d), these claims cannot be pursued in the current habeas corpus petition.

Turning to the items other than the alleged ineffective assistance of counsel, there are three items in which petitioner claims that he was improperly questioned by the police and that the resulting confessions were invalid. These are Items No. (2), (3), and (7), alleging that the questioning was conducted in the absence of counsel assigned to him on another criminal matter, and alleging that the confessions were coerced. As noted earlier, Justice Ambrecht held that the claims that the confessions should be suppressed were waived by petitioner when he pleaded guilty, which plea prevented any hearing on the suppression issue. This ruling was in accordance with established New York decisional law, as described earlier in this opinion. The effect of this waiver is that these claims could not be raised in the motion before Justice Ambrecht and cannot now be raised in the habeas corpus petition.

Item No. (5) involves the claim that the felony murder charge was not supported by the evidence. Justice Ambrecht found properly that this

claim was unpreserved for collateral review under state law, and under the cases cited earlier in this opinion, it cannot be asserted in the habeas corpus petition. Alternatively, the judge found against the claim on the merits. For this additional reason habeas corpus relief is unavailable. See 28 U.S.C. § 2254(d).

The habeas corpus petition includes the claim that there was unreasonable delay in initiating the prosecution, Item No. 4, and the further claim that defense counsel was ineffective because he did not raise the issue of delay, Item No. (1)(d). Respondent argues that these claims cannot be presented in the habeas corpus petition because state remedies have not been exhausted. See 28 U.S.C. § 2254(b)(1)(A).

Although the argument of delay in the prosecution was not featured in the motion before Justice Ambrecht, it can be found in petitioner's Memorandum of Law in support of his motion. Also, while the judge did not discuss the point in his decision, the judge stated that he had "examined defendant's remaining arguments and finds them to be without merit." It must be assumed that this covers the argument about delay.

This court finds that petitioner has exhausted his state remedies as to Item No. 4 and Item No. (1)(d) of his habeas claims. However, since Justice Ambrecht did not devote any discussion to these claims, the court will not consider them barred by his ruling.

-19-

But there is no valid claim of constitutional violation either as to the alleged delay in prosecuting or as to the alleged failure of counsel to raise the issue of delay. There is no evidence that petitioner was available to be arrested before this actually took place. Under the circumstances, the arrest in January 1992 is not shown to have involved any unreasonable delay. In any event, there is no showing of actual prejudice.

Two remaining claims can be dealt with briefly. These are Item No. (1)(b) and Item No. (1)(e), alleging that counsel's omnibus motion incorrectly asserted that petitioner voluntarily accompanied the detectives, and asserting that the attorney failed to be present at the line-up. The first contention is simply of no consequence. As to the second, it would appear (although it is not clear) that counsel made a <u>Wade</u> motion to challenge the line-up. However, neither the motion before Justice Ambrecht nor the present petition actually alleges that the line-up was improperly suggestive.

## Conclusion

For these reasons, the petition is denied and dismissed in its entirety.

As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. <u>See</u> 28 U.S.C. § 2253; <u>Lozada v. United States</u>, 107 F.3d 1011, 1016-17 (2d Cir. 1997),

abrogated on other grounds by <u>United States v. Perez</u>, 129 F.3d 255, 259-60 (2d Cir. 1997).

       SO ORDERED.

Dated:    New York, New York
            June 11, 2010

                                              THOMAS P. GRIESA
                                                 U.S.D.J.